IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **JONATHAN CARTER,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ]   CV-11-BE-3821-KOB |
| | ] |
| **BERT BELL/PETE ROZELLE NFL** | ] |
| **PLAYER RETIREMENT PLAN,** | ] |
| | ] |
| **Defendant.** | ] |

**MEMORANDUM OPINION**

This matter comes before the court on the Plaintiff Jonathan Carter's "Motion for Judgment" (doc. 23) and the Defendant Bert Bell/ Pete Rozelle NFL Retirement Plan's "Motion for Judgment on the Record" (doc. 24). Mr. Carter seeks to reverse the Plan Retirement Board's denial of Line of Duty disability benefits under the Employee Retirement Income Security Act of 1971 as amended, 29 U.S.C. § 1001 et seq. The court finds that because the Plan Retirement Board did not review all available pertinent information, the court must REMAND the case to the Retirement Board for a decision based on the totality of the evidence, including that evidence wrongfully excluded from the Plan's initial denial of Mr. Carter's benefits.

I.   STATEMENT OF FACTS

Because the court will remand the case to the Retirement Board, the statement of facts addresses only those facts that informed the court's decision to remand.     Mr. Carter is a former National Football League player and a participant in the Plan. The Plan provides retirement, disability, and related benefits to eligible professional football players and is the product of a

1

collective bargaining labor agreement between the National Football League Players Association and the National Football League Management Council.

On April 19, 2010, Mr. Carter submitted an application for Line of Duty benefits to the Plan. Line of Duty benefits are available monthly to any player who incurs a substantial disablement arising out of League football activities during the duration of the disablement but not longer than ninety months.

The Plan's standards for Line of Duty benefits are as follows:

> **6.1    Line-of-Duty Disability Benefits.** Any Player who incurs a "substantial disablement" (as defined in Section 6.4(a) and (b)) "arising out of League football activities" (as defined in Section 6.4(c)) will receive a monthly line-of-duty disability benefit … continuing for the duration of such substantial disablement but not for longer than 90 months.
>
> **6.4          Definitions.**
>
> > (a)    For applications received on or after May 1, 2002, a "substantial disablement" is a "permanent" disability that:
> >
> > > (1)    Results in a 50% or greater loss of speech or sight; or
> > >
> > > (2)    Results in a 55% or greater loss of hearing; or
> > >
> > > (3)    Is the primary or contributory cause of the surgical removal or major functional impairment of a vital bodily organ or part of the central nervous system; or
> > >
> > > (4)    For orthopedic impairments, using the American Medical Association Guides to the Evaluation of Permanent Impairment (Fifth Edition, Chicago, IL) ("*AMA Guides*"), is (a) a 38% or greater loss of use of the entire lower extremity; (b) a 23% or greater loss of use of the entire upper extremity; (c) an impairment to the cervical or thoracic spine that results in a 25% or greater whole body impairment;

> (d) an impairment to the lumbar spine that results in a 20% or greater whole body impairment; or (e) any combination of lower extremity, upper extremity, and spine impairments that results in a 25% or greater whole body impairment.
>
> In accordance with the *AMA Guides*, up to three percentage points may be added for excess pain in each category above ((a) through (e)). The range of motion test will not be used to evaluate spine impairments.

(Doc. 24-1, at 4 (quoting Plan Doc. §§ 6.1, 6.4, AR at 480-81.)).

In his application for Line of Duty benefits, Mr. Carter claimed he was eligible for benefits because of impairments in his left knee, right knee, and right elbow. After receiving his application for benefits, the Plan referred Mr. Carter to a neutral physician, Dr. Brunet, for an independent medical evaluation. Dr. Brunet examined Mr. Carter's knees and right elbow on June 2, 2010. Dr. Brunet rated Mr. Carter's impairments as upper extremity: 0%; lower extremity: 15%; whole person impairment: 6%; and no upward adjustment for pain. Because these ratings did not meet the Plan's thresholds for receipt of Line of Duty benefits, the Disability Committee denied Mr. Carter's claim for Line of Duty Benefits on July 7, 2010.

On August 25, 2010, Dr. Markarian, an orthopedic surgeon that Mr. Carter hired, examined Mr. Carter and rated his impairments as upper extremity: 31%; lower extremity: 25%; cervical spine: 5%; lumbar spine: 8%; whole person impairment: 38%; and a 2% upward adjustment for pain.

On September 19, 2010, in accordance with the Plan's appeal procedure, Mr. Carter appealed the Disability Committee's denial of his benefits. In support of his appeal, Mr. Carter submitted Dr. Markarian's report and amended his original application to also claim impairments

for his neck, lower back, right and left shoulders, and right and left hips.

The Plan arranged for a second independent medical evaluation by Dr. Perry, an orthopedist. On November 22, 2010, Dr. Perry examined Mr. Carter and rated his impairments as upper extremity: 0%; lower extremity: 30%; cervical spine: 6%; lumbar spine: 6%; whole person impairment: 21%; and a 2% upward adjustment for pain.

On January 19, 2011, the Plan submitted Mr. Carter's appeal to the Retirement Board members for their review and vote by mail ballot. On February 2, 2011, the Plan alleges that all of the Retirement Board members had returned their ballots by mail to the Plan.

On February 3, 2011, Physical Therapist Martha Frame examined Mr. Carter and rated his impairments as upper extremity: 26%; whole person impairment: 16%; and no upward adjustment for pain. On February 11, 2011, Mr. Carter submitted Physical Therapist Frame's report for consideration by the Retirement Board, but the Plan did not distribute it to the Retirement Board members for reconsideration of Mr. Carter's claim.  On March 3, 2011, the Plan sent a letter to Mr. Carter denying his appeal for Line of Duty benefits.

On September 23, 2011, Mr. Carter filed a Complaint in the Northern District of Georgia claiming that the Plan wrongfully and unreasonably denied him Line of Duty benefits. (Doc. 1). The Northern District of Georgia transferred the case to this court on November 4, 2011. (Doc. 6).  Both parties filed Motions for Judgment on the Pleadings and both parties responded to the other's brief. (Docs. 23, 24, 29, and 30).

II.     LEGAL ANLYSIS

The Eleventh Circuit has made it clear that, "[r]eveiw of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it

made its decision." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011) (citing *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989)). Accordingly, "[A] court should not resolve the eligibility question on the basis of evidence never presented to [the Plan] but should remand to the [Plan] for a new determination." *Jett,* 890 F.2d at 1140 (citations omitted). "A court's decision whether to remand a case to an administrator under ERISA is discretionary." *Johnson v. Hartford Life & Accident Ins. Co.*, 2008 WL 8869743 (N.D. Ala. 2008) (citing *Levinson v. Reliance Standard life Ins. Co.*, 245 F.3d 1321, 1328 (11th Cir. 2001)).

In this case, the Plan concedes that the Retirement Board did not review Physical Therapist Martha Frame's Report when making the determination that Mr. Carter was not eligible for Line of Duty disability benefits. (Doc. 30, at 15). The Plan first alleged that it considered the Frame Report and that its decision was still not arbitrary or capricious despite the Frame Report. (Doc. 24-1, at 7). Once Mr. Carter correctly brought to the attention of the Plan that it did not consider the Frame Report because the Report did not have assigned Bates numbers in the Administrative Record, the Plan conceded that it was a "misstatement" that it considered the Report. (Doc. 30, at 15). The Plan argued that if the court finds it should have considered the Frame Report, then the proper remedy is remand, not reversal. The court agrees.

By not reviewing the Frame Report, the Retirement Board did not review all of the pertinent evidence available to it in making the determination that Mr. Carter did not meet the required thresholds to qualify for benefits. In *Levinson*, the Eleventh Circuit upheld the district court's refusal to remand the case because "if the party requesting remand desired new evidence to be in the administrative record, it should have acquired that evidence before the appeals

process ended." *Hooks v. Hartford Life & Accident Ins. Co.*, 2012 WL 5187780, *2 (M.D. Ala. 2012) (citing *Levinson*, 245 F.3d at 1328). Mr. Carter did just that– he gave the Plan further evidence of his disability and impairment while the appeals process was ongoing. To Mr. Carter or any other non-Plan administrator's knowledge, the Retirement Board was still considering Mr. Carter's claim on February 11, 2010 when he submitted Physical Therapist Frame's Report.

This court agrees with several other district courts who have stated that "Eleventh Circuit precedent does not bind a district court to remand to the plan administrator when the plaintiff has acquired additional evidence after completion of the claims process." *Hooks*, at *3 (citing *Ray v. Sun Life & health Ins. Co.*, 752 F. Supp. 2d 1229, 1234 (N.D. Ala)). This case, however, is distinguishable from those cases where either the plaintiff or defendant has acquired evidence after the administrative appeals process has ended. Here, Mr. Carter submitted Physical Therapist Frame's Report to the Plan with the expectation that the Retirement Board would consider it in its review of his claim.

Importantly, in this case, remand is appropriate and indeed necessary because the Frame Report bears on the weight and credibility the Retirement Board may have given to the other three physicians' reports. The chart provided by the Plan compares the three physicians' reports with the required Plan thresholds and helps to articulate why the court cannot review the Plan's decision at this stage:

| Doctor | Upper Extremity | Lower Extremity | Cervical Spine | Lumbar Spine | Whole Person Impairment |
|---|---|---|---|---|---|
| *Required Thresholds* | *23%* | *38%* | *25%* | *20%* | *25%* |
| Brunet | 0% | 15% | | | 6% |
| Perry | 0% | 30% | 6% | 6% | 21% (+ 2% for pain) |
| Markarian | 31% | 25% | 5% | 8% | 38% (+ 2% for pain) |

    Physical Therapist Frame rated Mr. Carter at a 26% upper extremity disability, exceeding the 23% required threshold and qualifying him for disability benefits on that category alone, and a 16% whole person impairment. Certainly, the Board should have considered this evidence before denying Mr. Carter benefits under the Plan thresholds, and the Board should have considered it in light of the three other Reports in evidence. The Board needs to review the Frame Report in conjunction with the three physicians' reports to properly determine whether Mr. Carter qualifies as disabled under the Plan.

    Mr. Carter argues that remand is not appropriate in this case because it will "further delay a timely benefit determination, will serve to deprive [Mr.] Carter of the disability benefits needed to buy his daily bread, and will allow the Plan an unwarranted bite at the apple to justify its wrong and capricious decision." (Doc. 29, at 2-3). The court does not seek to further delay Mr. Carter's receipt of benefits, if they are rightly due, but the court cannot review the Plan's denial when the Plan did not review all of the pertinent evidence before it. In reviewing the Plan's denial, the court cannot consider evidence not considered by the Plan and thus could not consider

the Frame Report and its implication on the three other reports. *See Blankenship*, 644 F.3d at 1354 (citing *Jett* 890 F.2d at 1140). The Plan's failure to consider the Frame Report made its determination incomplete and unjust, and this court's review of the denial without that evidence before it would be a continuation of the same problem. The court understands Mr. Carter's frustration, but it cannot review the incomplete record before it as it stands now.

In this case, "completeness calls for [the Plan] to issue a new determination based upon all the additional records offered by [Mr. Carter]." Without that new determination before the court, the court's review would be incomplete and inappropriate. For those reasons, the court will REMAND this case to the Plan's Retirement Board for a de novo consideration of Mr. Carter's eligibility for Line of Duty disability benefits.

DONE and ORDERED this 3rd day of December, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE